IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| SHARON WINKFIELD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: |
| ) | |
| CHICAGO TRANSIT AUTHORITY, a ) | |
| Municipal corporation, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**

NOW COMES, Plaintiff, SHARON WINKFIELD, by and through her attorneys, Seth R. Halpern and Meredith W. Buckley of Malkinson & Halpern, P.C., and for her Complaint at Law against Defendant, CHICAGO TRANSIT AUTHORITY, states as follows:

**I.     NATURE OF THE CASE**

1. Plaintiff, SHARON WINKFIELD (hereinafter "Plaintiff" or "Winkfield") was employed as a Signal Maintenance Maintainer for Defendant CHICAGO TRANSIT AUTHORITY (hereinafter "Defendant" or "CTA") from approximately February 2, 1998 through March 27, 2017, when Plaintiff was removed from service and prohibited from working because of her disability.

2. This is an individual action brought by Plaintiff for failure to accommodate and disability discrimination in violation of the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.* (hereinafter "IHRA") and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (hereinafter "ADA").

3. As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages and benefits and significant related emotional distress. Plaintiff seeks all

damages she is entitled to under law, including compensatory and punitive damages, reasonable attorneys' fees and costs and other appropriate legal and equitable relief.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to the ADA, 42 U.S.C. § 12101 *et seq.* This Court has supplemental jurisdiction over Plaintiff's Illinois Human Rights Act claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because substantial parts of the events or omissions giving rise to the claims herein occurred in this judicial district and this is where Plaintiff suffered the primary harm from Defendant's actions.

## III. PARTIES

6. Plaintiff is a citizen of the United States and presently resides and at all relevant times did reside and currently does reside in Cook County, Illinois.

7. Defendant CTA is an Illinois municipal corporation with its principal administrative offices located at 567 W. Lake Street, Chicago, Illinois.

8. At all relevant times, Defendant qualified as an employer as defined by the ADA, 42 U.S.C. § 12111 and the IHRA, 775 ILCS 5/2-101(B).

9. At all relevant times, Plaintiff qualified as an employee as defined by the ADA, 42 U.S.C. § 12111 and the IHRA, 775 ILCS 5/101(A).

10. At all relevant times, Plaintiff performed her job satisfactorily and to the reasonable expectations of her employer, Defendant CTA.

## IV. PROCEDURAL REQUIREMENTS

11. Plaintiff has complied with all administrative requirements by filing a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission

("EEOC"), which was cross-filed with the Illinois Department of Human Rights, based on and related to allegations complained of herein.

12. On October 15, 2018, Julianne Bowman, District Director of the EEOC, issued a Determination that the evidence obtained in the EEOC investigation established reasonable cause that the Defendant CTA discriminated against Plaintiff because of her disability and by not providing Plaintiff with a reasonable accommodation in violation of the ADA.

13. On December 19, 2018, Plaintiff received her Notice of Right to Sue, and as such, this is a timely filed Complaint.

## V.     COMMON ALLEGATIONS

14. Plaintiff was hired by the CTA on or about February 2, 1998. Plaintiff worked continuously for Defendant CTA from her date of hire until approximately March 27, 2017, when Defendant removed Plaintiff from service.

15. Throughout her employment with Defendant, Plaintiff worked as a Signal Maintenance Maintainer.

16. Signal Maintenance Maintainers are assigned to "inside" shop jobs or "outside" Right of Way jobs. Outside Right of Way jobs typically require Signal Maintenance Maintainers to walk on the train tracks. Inside shop jobs typically do not require Signal Maintenance Maintainers to walk on train tracks.

17. For fourteen consecutive years prior to her removal from service in March of 2017, Plaintiff was assigned to a Signal Maintenance Maintainer position in the "shops" or inside work; first at the Howard Street shop for approximately ten years and then at the 98th Street Shop for approximately four years.

18. Plaintiff performed her job duties as a Signal Maintenance Maintainer inside the shops to the satisfaction of the Defendant and met Defendant's reasonable expectation in performing her job duties.

19. On or about January 31, 2002, Plaintiff suffered a serious work injury to her right ankle which required surgery. Plaintiff returned to work for the CTA approximately one year after her ankle injury.

20. Plaintiff filed a workers' compensation claim related to the January 31, 2002, ankle injury, and such workers' compensation claim was settled on or around September 14, 2007. Pursuant to the settlement, Defendant CTA's workers compensation insurance carrier was to pay for future medical treatment reasonably related to Plaintiff's January 31, 2002, right ankle injury.

21. Plaintiff's 2002 ankle injury resulted in permanent impairment that affected Plaintiff's ability to walk, requiring her to use a cane from time to time, causing Plaintiff to walk with a visible limp and requiring her to undergo periodic physical therapy and strengthening treatments, which was to be paid for by Defendant's CTA workers compensation carrier, consistent with the terms of Plaintiff's workers' compensation settlement.

22. Despite Plaintiff's ankle injury and permanent impairment related to such injury, for the 14 years that Plaintiff was assigned to the inside shops, Plaintiff was able to perform all essential functions of her job as a Signal Maintenance Maintainer without any accommodations.

23. At all times relevant after her 2002 ankle injury, Plaintiff qualified as a disabled person under the ADA and the IHRA in that her ankle injury constituted a non-transient, physical impairment that substantially limited one or more major life activies, specifically her ability to

walk and stand, and that such impairment was unrelated to her ability to perform her job duties as a Signal Maintenance Maintainer in the shops.

24. In or around March 2017, Plaintiff was notified that there would be a job pick pursuant to the Collective Bargaining Agreement between the CTA and the International Brotherhood of Electrical Workers Local Union #9 ("I.B.E.W), of which Plaintiff was a member.

25. During a job pick, Signal Maintenance Maintainers were allowed to "pick" a job based on their seniority.

26. Certain Signal Maintenance Maintainer jobs were excluded from the job pick. This allowed certain Signal Maintenance Maintainers to remain in their jobs and not be "bumped" out of their jobs during a job pick, regardless of such employee's seniority.

27. For the past 14 years, Plaintiff, based on her seniority, had been able to pick her job inside the shop without issue. As such, Plaintiff had no reason to believe that she would not be able to again select her inside shop job during the March, 2017, job pick.

28. When it was Plaintiff's turn in the March, 2017, job pick, all inside shop jobs had been chosen, forcing Plaintiff, for the first time in 14 years to choose an outside Right of Way position. The Right of Way outside position would require Plaintiff to walk on the tracks and perform various outside job duties. Plaintiff immediately expressed concerns to her manager Phil Chavez, about her ability to walk on the tracks and perform various outside job duties because of her disability.

29. Plaintiff was scheduled to start in the new outside, Right of Way position on or about April 2, 2017.

30. On March 27, 2017, Plaintiff met with Jeannine Messina, CTA's Senior Manager Administration/Infrastructure, to inquire about how to obtain coverage for physical therapy for

5

her right ankle pursuant to her 2007 workers' compensation settlement and to discuss concerns about her ability to perform her job as an outside Right of Way Signal Maintenance Maintainer.

31. Jeannine Messina insisted that Plaintiff's I.B.E.W. Local #9 representative Rocco Minnini be present for Plaintiff's March 27, 2017, meeting and as such, Plaintiff had a Union representative present for the March 27, 2017, meeting.

32. Ms. Messina completed a "Record of Interview" for the March 27, 2017, meeting which stated "I noticed that she [Winkfield] had an extreme limp to her walk." Based on Plaintiff's "visual" disability, Ms. Messina removed Plaintiff from service "as unfit to do her job." Ms. Messina told Plaintiff that she was removed from service until she was medically cleared to return to work by CTA's physicians. Plaintiff was additionally provided with documents related to the CTA's Accommodation Review Committee ("ARC") and instructed to open a short term disability claim.

33. Ms. Messina was hostile and dismissive of Plaintiff and her ankle disability during the March 27, 2017, meeting.

34. At all relevant times after March 27, 2017, Plaintiff was and remained willing and able to return to her position of Signal Maintenance Maintainer inside the shops or other comparable inside position.

35. At all relevant times after March 27, 2017, Plaintiff was and remained able to perform all essential functions of her job as a Signal Maintenance Maintainer inside the shops, without any accommodations, as she had been doing for the preceding 14 years.

36. On March 29, 2017, Plaintiff was medically cleared to work in the inside shops, without any restrictions, by CTA's physicians.

6

37. Plaintiff provided the above described work releases to CTA's Jeannie Messina on or about March 30, 2017, which requested that Plaintiff be accommodated with a permanent inside shop position that would not be subject to the job pick. Jeannie Messina was again hostile and dismissive of Plaintiff's request for accommodation and informed Plaintiff that the CTA would not put Plaintiff back in service and would not accommodate Plaintiff with an inside shop job.

38. On or about April 3, 2017, Plaintiff submitted a "Request for Reasonable Accommodation" to the CTA's ARC, requesting that Plaintiff be allowed to return to work inside the shops, and, thus, be placed in a position that was excluded from the job pick.

39. While the CTA's ARC reviewed Plaintiff's request for accommodation, Plaintiff did not receive any wages.

40. On or about May 7, 2017, and May 8, 2017, Plaintiff complained to Dorval Carter, CTA's President, and I.B.E.W. Local #9 Assistant Business Manager, John Burkhead, about the discriminatory and hostile treatment by CTA's Jeannine Messina related to Plaintiff's request for accommodation and related to Plaintiff's disability. Despite such complaints, no responsive action was taken.

41. On or about June 20, 2017, CTA's ARC offered Plaintiff a position as a Customer Service Clerk receiving $11/hour with no pension benefits, no seniority, no union rights, no vacation time, no holidays, no health benefits, no life insurance, no set schedule and part time hours only. As a Signal Maintenance Maintainer Plaintiff was making approximately $48.90/ hour, with pension benefits, seniority, union rights, vacation time, paid holidays, health insurance benefits, a set schedule and fulltime hours.

42. Defendant CTA's offered "accommodation" of the Customer Service Clerk was not reasonable or comparable to Plaintiff's position as a Signal Maintenance Maintainer.

43. On or about October 5, 2017, the CTA informed Plaintiff that she may qualify to receive her pension early, at her then age of 48, as she had been placed into "Temporary Medical Disability" status as a result of being removed from service.

44. As Plaintiff had been without wages since she was removed from service in March of 2017, Plaintiff was forced to take her pension early, resulting in Plaintiff receiving significantly less pension benefits than she would have been entitled to had she been allowed to continue her employment inside the shops.

45. As a result of Defendant's employment actions complained of herein, Plaintiff experienced and continues to experience significant lost wages and benefits and has suffered from and continues to suffer from significant emotional distress, embarrassment, mental anguish and humiliation.

## COUNT I
### Failure to Accommodate – ADA and IHRA

46. Plaintiff repeats and re-alleges paragraph 1-45 of the Complaint as Paragraph 46 of Count I, as though fully re-written herein.

47. Beginning in March of 2017, and continuing, in violation of the ADA and the IHRA, Defendant failed to provide Plaintiff her requested reasonable accommodation for her known disability, a permanently injured and impaired ankle.

48. Plaintiff's request for an accommodation to be placed in a Signal Maintenance Maintainer position inside the shops, excluded from the job pick, would not have caused an undue hardship on the employer.

49. In refusing Plaintiff's request for a reasonable accommodation, Defendant acted maliciously and/or recklessly and/or with deliberate indifference and violated the ADA and the IHRA.

50. Plaintiff has been damaged by Defendant's violation of the ADA and the IHRA inasmuch as she has lost pay and benefits since March 27, 2017, and has and continues to suffer loss of employment, wages, seniority, pension benefits and other compensation, as well as emotional distress, embarrassment, humiliation and mental anguish.

WHEREFORE, Plaintiff, SHARON WINKFIELD, respectfully requests that this Court enter an Order:

(a) Declaring the conduct of Defendant CTA, and its agents and employees, as described herein is in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*;

(b) Declaring the conduct of Defendant CTA, and its agents and employees, as described herein is in violation of the Illinois Human Rights Act, , 775 ILCS 5/2-101, *et seq.*;

(c) Awarding Plaintiff all back pay and wages, pension benefits and other compensation she lost and continues to lose, including interest, as a result of Defendant's conduct;

(d) Awarding Plaintiff compensatory damages;

(e) Awarding Plaintiff punitive damages to the fullest extent allowable under law;

(f) Awarding Plaintiff reasonable attorneys' fees and costs; and

(g) Awarding Plaintiff any other and further relief this Court deems just and proper.

## COUNT II
## Discrimination – ADA and IHRA

51. Plaintiff repeats and re-alleges paragraph 1-45 of the Complaint as Paragraph 51 of Count I, as though fully re-written herein.

52. Beginning on March 27, 2017, Defendant CTA discriminated against Plaintiff because of her disability by subjecting Plaintiff to harassing and different terms and conditions of employment which include but are not limited to:

    (a) being dismissive and hostile to Plaintiff when she requested a reasonable accommodation and discussed her disability;

    (b) subjecting Plaintiff to harsher and stricter scrutiny while she was attempting to engage in an interactive process related to her disability;

    (c) removing Plaintiff from service; and

    (d) offering Plaintiff a demotion to a position that was substantially less pay, less benefits and part time hours which effectively constituted a constructive discharge.

53. In discriminating against Plaintiff because of her disability, Defendant acted maliciously and/or recklessly and/or with deliberate indifference and violated the ADA and the IHRA.

54. Plaintiff has been damaged by Defendant's violation of the ADA and the IHRA inasmuch as she has lost pay and benefits since March 27, 2017, and has and continues to suffer loss of employment, wages, seniority, pension benefits and other compensation, as well as emotional distress, embarrassment, humiliation and mental anguish.

WHEREFORE, Plaintiff, SHARON WINKFIELD, respectfully requests that this Court enter an Order:

    (a) Declaring the conduct of Defendant CTA, and its agents and employees, as described herein is in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*;

    (b) Declaring the conduct of Defendant CTA, and its agents and employees, as described herein is in violation of the Illinois Human Rights Act, , 775 ILCS 5/2-101, *et seq.*;

    (c)    Awarding Plaintiff all back pay and wages, pension benefits and other compensation she lost and continues to lose, including interest, as a result of Defendant's conduct;

    (d)    Awarding Plaintiff compensatory damages;

    (e)    Awarding Plaintiff punitive damages to the fullest extent allowable under law;

    (f)    Awarding Plaintiff reasonable attorneys' fees and costs; and

    (g)    Awarding Plaintiff any other and further relief this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,

s/Meredith W. Buckley
Meredith W. Buckley

Seth R. Halpern
Meredith W. Buckley
MALKINSON & HALPERN, P.C.
33 N. Dearborn St., Suite 1540
Chicago, Illinois 60602
(312) 427-9600
shalpern@mhtriallaw.com
mbuckley@mhtriallaw.com

11