# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SHARON WINKFIELD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 19 C 1721 |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, a municipal corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Chicago Transit Authority's ("CTA") motion to dismiss Plaintiff Sharon Winkfield's ("Winkfield") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies CTA's motion.

## BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Winkfield's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

CTA is an Illinois municipal corporation that provides public transportation. Winkfield is an Illinois resident who worked for CTA from February 2, 1998 through March 27, 2017.

Throughout her employment with CTA, Winkfield worked as a Signal Maintenance Maintainer ("SMM"). SMMs are assigned to inside shop jobs or outside Right of Way jobs—outside jobs typically require SMMs to walk on the train tracks, while inside shop jobs do not. For the entirety of her fourteen-year employment, Winkfield was assigned to an inside shop job.

On or about January 31, 2002, Winkfield suffered a serious work injury to her right ankle which required surgery. This injury resulted in permanent impairment that affected Winkfield's ability to walk and required her to occasionally use a cane and undergo physical therapy. Despite this ankle injury and permanent disability, Winkfield was able to perform all the essential duties of her job as an SMM without any accommodations.

As a member of the International Brotherhood of Electrical Workers ("IBEW" or "Union"), Local #9, Winkfield was covered by a Collective Bargaining Agreement ("CBA") between the IBEW and CTA. This CBA had a provision that allowed SMMs a period to "pick" a job based on their seniority. However, certain SMM jobs were excluded from the job pick, allowing them to remain in their jobs during a job pick.

For fourteen years, Winkfield was able to choose an inside shop job due to her seniority. However, during a job pick in March 2017, Winkfield had to choose an outside job, as the inside shop jobs had been chosen when it was her turn to choose. Afterwards, Winkfield met with her manager, Phil Chavez ("Chavez"), to express

concerns about the impact of her disability on her capacity to walk and perform various outside-job duties, which were scheduled to begin on or about April 2, 2017.

Winkfield also met with Jeannine Messina ("Messina"), CTA's Senior Manager for Administration/Infrastructure, on March 27, 2017. At the meeting, Messina observed an extreme limp in Winkfield's walk and removed Winkfield from service "as unfit to do her job" until she was medically cleared to return to work by CTA's physicians. Messina was otherwise hostile and dismissive of Winkfield and her ankle disability.

At all relevant times after March 27, 2017, Winkfield was and remained able to perform all essential functions of her inside shop job without any accommodations. She was willing to return to that position or another comparable inside position. On March 29, 2017, Winkfield was medically cleared by CTA's physicians to work an inside shop job without any restrictions. Winkfield provided Messina with the work release, which requested that she be accommodated with a permanent inside shop job that would not be subject to the job pick. According to the complaint, Messina was again hostile and dismissive of Winkfield's request and informed her that CTA would not place her back in service or accommodate her with an inside shop job.

Following this development, Winkfield submitted a "Request for Reasonable Accommodation" to the CTA Accommodation Review Committee ("ARC"), requesting that she be allowed to return to an inside SMM position and be excluded

3

from the job pick. While this request was being reviewed, Winkfield did not receive any wages.

On or about May 7, 2017, Winkfield complained to Dorval Carter ("Carter"), CTA's President, and John Burkhead ("Burkhead"), IBEW Local #9 Assistant Business Manager, about the discriminatory and hostile treatment by Messina related to Winkfield's request for accommodation and disability. Despite such complaints, no responsive action was taken.

On or about June 20, 2017, CTA's ARC offered Winkfield a position as a Customer Service Clerk. In this role, Winkfield would receive $11/hour with no pension benefits, no seniority, no union rights, no vacation time, no holidays, no health benefits, no life insurance, no set schedule, and part-time hours only. In contrast, as an SMM, Winkfield was making approximately $48.90/hour with pension benefits, seniority, union rights, vacation time, paid holidays, health insurance benefits, a set schedule, and full-time hours. Winkfield did not accept this new position.

In October 2017, CTA informed Winkfield that she may be eligible to receive her pension early because she was placed into "Temporary Medical Disability" status, which occurred when she was removed from service. Winkfield alleges that she accepted the offer to take her pension early because she had been without wages since her March 2017 termination. Winkfield resultantly received less pension benefits had she would have gotten with her inside shop job and continues to experience significant lost wages and benefits.

4

Based on these events, Winkfield filed a complaint against CTA on March 12, 2019, alleging failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2-101 *et seq.* (Count I), and a separate count for disability discrimination under those statutes (Count II). On May 13, 2019, CTA filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but they must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## **DISCUSSION**

CTA urges the Court to dismiss Count I because Winkfield is not a qualified individual under the ADA, failed to request a reasonable accommodation, and rejected the offer of a vacant position. CTA moves to dismiss Count II because Winkfield "is not disabled as defined by the ADA, is not qualified to perform the essential functions of her job, and did not properly plead that she suffered an adverse employment action." The Court addresses each argument in turn.[1]

**I. Failure to Accommodate**

The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" constitutes discrimination under the ADA, unless the employer can demonstrate that the accommodation would impose an "undue hardship." *Id.* § 12112(b)(5)(A); *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018). To state a claim for a failure to accommodate, Winkfield must allege that: (1) she is a qualified individual with a disability; (2) CTA was aware of her

---

[1] CTA also moved the Court to strike Winkfield's claims for punitive damages under the complaint. However, Winkfield agreed to voluntarily dismiss those claims, so the Court need not address that issue in the present motion.

6

disability;[2] and (3) CTA failed to reasonably accommodate her disability. *Preddie v. Bartholomew Consol. School Corp.*, 799 F.3d 806, 813(7th Cir. 2015). An IHRA claim for disability discrimination is analyzed under the same framework as an ADA claim. *McKay v. Vitas Healthcare Corp. of Ill.*, 232 F. Supp. 3d 1038, 1043 (N.D. Ill. 2017). Accordingly, the Court will analyze both claims under the ADA.

**A. Qualified Individual**

The parties first dispute whether Winkfield is a qualified individual for purposes of the ADA. A qualified individual means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 959 (7th Cir. 2014) (citing 42 U.S.C. § 12111(8)). When determining whether an individual is a "qualified individual," courts consider (1) whether an individual possesses "the requisite skill, experience, education and other job-related requirements of his employment position, and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Budde v. Kane Cnty. Forest Pres.*, 597 F.3d 860, 862 (7th Cir. 2010) (citing 29 C.F.R. § 1630.2(m)).

CTA claims that Winkfield does not satisfy this test with respect to her outside SMM position. However, that is not the analysis required under the statute. According to 29 C.F.R. § 1630.2(m), an individual is qualified if they have the necessary skill,

---

[2] This element is not at issue for purposes of this motion.

7

experience, education, and other requirements of the position they *hold or desire*. Given that Winkfield desired accommodation as an inside shop SMM, our analysis relates to that position. Winkfield alleges that she was able to perform all the essential functions of her inside shop job for the last fourteen years and continues to be able to perform said functions. Further, she provided verification from a CTA physician clearing her to work inside without restrictions. Accordingly, Winkfield has sufficiently alleged that she is a qualified individual under the ADA.

### B. Reasonable Request for Accommodation

Failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" constitutes discrimination under the ADA, unless the employer can demonstrate that the requested accommodation would impose an "undue hardship." 42 U.S.C. § 12112(b)(5)(A); *Rodrigo*, 879 F.3d at 241. An employer may have to assign an employee to a different position as a reasonable accommodation; however, this duty is typically limited to vacant positions, meaning an employer is not required to "bump" other employees to create a vacancy. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996).

The Supreme Court has clarified the application of this rule to employers who use seniority systems for job assignment and promotion purposes. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 397 (2002). Ordinarily, where a requested accommodation conflicts with bargained for seniority systems, the accommodation would be unreasonable under the ADA. *Id.* at 403. However, the plaintiff can show that the

requested accommodation is reasonable if "special circumstances" exist that alter employees' bargained for expectations. *Id.* at 405. For example, "[t]he plaintiff might show that the system already contains exceptions such that, in the circumstances, one further exception is unlikely to matter." *Id.* Accordingly, a conflict with an established seniority system does not make an accommodation per se unreasonable.

CTA maintains that Winkfield's requested accommodation was unreasonable because there were no vacant inside shop jobs after the seniority-based job pick. Granting her the accommodation would require CTA to "bump" an employee from their chosen job, which would violate the CBA. However, Winkfield argues that there were exceptions to the seniority system that allowed employees to be exempt from the job pick. Therefore, her request for an accommodation to be placed in an inside shop job that was exempt from the job pick would not have been an undue hardship for CTA, as they already had the requested procedures in place. These allegations are sufficient to pass the motion to dismiss threshold, so Winkfield has adequately plead that her requested accommodation was reasonable.

**C. No Reasonable Vacancy**

After an employee's initial disclosure of her disability, "the ADA obligates the employer to engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *EEOC v. Sears, Roebuck, and Co.*, 417 F.3d 789, 804 (7th Cir. 2005). The interactive process allows employers to work with the disabled employee "so that, together, they might identify the employee's

9

precise limitations and discuss accommodations which might enable the employee to continue working." *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998). The Seventh Circuit has described the interactive process as having "give-and-take" elements, such that "if the employee has requested an appropriate accommodation, the employer may not simply reject it without offering other suggestions or at least expressing a willingness to continue discussing possible accommodations." *Sears*, 417 F.3d at 806.

The ADA lists several forms of reasonable accommodation, including "reassignment to a vacant position." 42 U.S.C. § 12111(9). According to the EEOC guidelines, an employer who utilizes reassignment as a reasonable accommodation for a current employee "should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time." *EEOC Interpretive Guidance on Title I of the Americans with Disabilities Act,* 29 C.F.R. App. § 1630.2(o) (2016).

Here, CTA argues that they are only obligated to provide some reasonable accommodation, not the accommodation that Winkfield requests or prefers. *See Malabarba v. Chicago Tribune, Co.*, 149 F.3d 690, 699 (7th Cir. 1998). Specifically, CTA contends that it need only transfer Winkfield to a position for which she is otherwise qualified, not specifically an inside shop job. *See Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir. 1998). While that premise is correct, it does not mean the Customer Service Clerk position CTA offered to Winkfield comports with the

EEOC guidelines. Indeed, the significantly lower, part-time position CTA offered to Winkfield—one that paid roughly one-third of her salary and provided her with no benefits or seniority rights—was not in accordance with the EEOC guidelines. As noted above, there were exceptions made to the job pick, and Winkfield could have been offered such a position or something comparable. Thus, Winkfield's rejection of the Customer Service Clerk position is not a bar to her recovery here, and her failure to accommodate claim may proceed. Accordingly, the motion to dismiss Count I is denied.

## II. Disability Discrimination

The ADA prohibits discrimination against a qualified individual with a disability. 42 U.S.C. § 12112(a). To allege disability discrimination, a plaintiff must claim that "(1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of the job, either with or without a reasonable accommodation, and (3) she suffered from an adverse employment action because of her disability." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 839 (7th Cir. 2012) (citing *Nese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir. 2005)). As noted above, Winkfield has adequately alleged that she is disabled within the meaning of the ADA and is qualified to perform the essential functions of an SMM with the reasonable accommodation of being placed in an inside shop position. The only remaining issue is whether Winkfield suffered an adverse employment action due to her disability.

Winkfield must allege that "but for" her disability, defendants would not have taken an adverse action against her. *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) ("This language requires [the plaintiff] to prove that, but for [her] disability, [she] would have been able to access the services or benefits desired.") (internal citation omitted). "An adverse employment action must be 'materially' adverse to be actionable, meaning 'more than a mere inconvenience or an alteration of job responsibilities.'" *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001) (internal citation omitted). A materially adverse change in one's job "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Lavalais v. Vill. Of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013) (emphasis omitted).

The allegations in Winkfield's complaint meet this pleading requirement. Winkfield alleges that Messina expressed a hostile attitude toward her disability and removed her from work involuntarily and without pay until she was medically cleared by CTA physicians. Moreover, despite being cleared to work, Winkfield was not returned to an SMM position, but was offered "a demotion to a position that was substantially less pay, less benefits and part time hours which effectively constituted a constructive discharge" and forced her into early retirement. Dkt. 1:19-cv-1721, #1.

Viewing these allegations in the light most favorable to Winkfield, they are sufficient to stave off a motion to dismiss. Accordingly, the motion to dismiss Count II is denied.

## **CONCLUSION**

For the aforementioned reasons, the Court denies CTA's motion to dismiss. It is so ordered.

Dated: 1/24/2020

_____

Charles P. Kocoras
United States District Judge